JOE HILL
HILL LAW OFFICES
P.O. Box 500917
Saipan, MP 96950
Tel.: (670) 234-7743/6806
Fax: (670) 234-7753
E-mail: vesta@pticom.com

*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ABU YOUSUF and MD. ROKONNURZZAMAN,<br><br>Plaintiffs,<br><br>vs.<br><br>LONGFENG CORPORATION *dba/aka* NEW XO MARKET and PARTYPOKER, GUOWU LI, XU GUI QING, and FELOTEO V. RANADA *dba* N.V.M. ENTERPRISES, jointly and severally,<br><br>Defendants. | Civil Case No. 1:21-cv-00015<br><br>SECOND AMENDED COMPLAINT FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT |

**COME NOW** Plaintiffs Abu Yousuf and Md. Rokonnurzzaman, through counsel, pursuant to the Court's Order (Civil Minutes) dated February 10, 2022, and as their Second Amended Complaint ("SAC") and causes of action and claims, allege and aver against Defendants, jointly and severally, as follows:

**INTRODUCTION**

1. This is a complaint, *inter alia*, for unpaid regular and overtime wages, in violation of the Fair Labor Standards Act (FLSA), as amended, and made applicable to this action by the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Article V, §502(a)(2), and under the general laws of the Commonwealth of the Northern Mariana Islands (CNMI).

2. Plaintiffs Abu Yousuf and Md. Rokonnurzzaman hereby bring their claims for labor, work and services, duly performed, rendered and done in a workman-like manner for Defendants-employers who wilfully, intentionally and deliberately refused and failed to pay Plaintiffs at the rate or amount provided for or required under the FLSA, against Defendants Longfeng Corporation *dba/aka* New XO Market and Partypoker, Guowi Li, Xu Gui Qing, and Feloteo V. Ranada *dba* NVM Enterprises.

3. Defendants Longfeng Corporation, Guowu Li and Xu Gui Qing own and operate a grocery store (New XO Market) and an adult game room business (Partypoker) in Gualo Rai, Saipan, CNMI.

4. Defendant Feloteo V. Ranada *dba* N.V.M. Enterprises, a sole proprietorship, is and was at all times engaged in the business of providing manpower services to other business and employers, including Longfeng Corporation and other Defendants.

5. Plaintiffs further allege and aver that Defendants paid each Plaintiff a flat rate of $4.25 per hour for minimum wage work/labor and for overtime hours worked.

6. Plaintiffs therefore seek and pray for an order and award of compensatory damages for unpaid minimum wages and overtime, plus liquidated damages under FLSA, 29 U.S.C. § 216(b), pre-judgment and post-judgment interest, and attorney's fees and costs.

## JURISDICTION AND VENUE

7. The Court is granted jurisdiction over Plaintiffs' FLSA claims under 28 U.S.C. §1331 (federal question jurisdiction), and as proceedings arising under an Act of Congress regulating commerce pursuant to 28 U.S.C. §1337(a).

8. The Court also has jurisdiction over Plaintiffs' regular and overtime wage claims pursuant to 29 U.S.C. §§ 206 and 207.

9. Venue is properly placed in the United States District Court for the Northern Mariana Islands in that all parties were present in, and all acts alleged and complained of occurred in the

1 CNMI.

## PARTIES AND CAPACITY

### A. Plaintiffs

10. Plaintiff Abu Yousuf ("Yousuf") is a citizen of Bangladesh and resided at all relevant times, in the CNMI and worked for and/or was suffered to work variously by Defendant Longfeng Corporation, through its supervisory and management staff, as a security guard and/or bagger, and as general laborer, from approximately April 07, 2018 until February 19, 2021.

11. Plaintiff Md. Rokonnurzzaman ("Rokonnurzzaman") is a citizen of Bangladesh and resided at all relevant times, in the CNMI and worked for and/or was suffered to work variously by Defendant Longfeng Corporation, through its (LFC's) supervisory and management staff, as a security guard, and general laborer from approximately May 26, 2018 until January 20, 2019.

12. At all relevant times, each Plaintiff was given and/or took orders and directions from either Defendant GuoWu Li or Defendant Xu Gui Qing, or both, while working at New XO Market and/or Partypoker game room.

13. At all relevant times, each Plaintiff relied and depended on his income from work at New XO Market and Partypoker for his livelihood and support.

14. At all relevant times, Plaintiffs performed their work diligently and in a workmanlike manner for the Defendants.

### B. Defendant Longfeng Corporation

15. On information and belief, Defendant LongFeng Corporation ("LFC"), is a domestic corporation organized under Commonwealth law and also doing business as and under the names of New XO Market and Partypoker, with its principal place of business believed to be in Saipan, CNMI.

16. At all relevant times, LFC was an enterprise engaged in commerce within the meaning

of the FLSA, in that, *inter alia,* it had employees handling, selling, and working on goods, materials and commodities (including but not limited to vegetables, fruits, meats, and other cooking ingredients; canned goods, soft drinks and beverages; fertilizers, dog food and other animal feeds; freezers, refrigerators and other kitchen equipment; poker machines and other gaming paraphernalia) that had been made, shipped, produced and transported in interstate and foreign commerce, and designed for sale, at bulk or in retail, to consumers and customers, in 20 or 40 foot shipping containers that had been shipped in interstate and foreign commerce, that LFC had transported to its business lot and storage facilities in Gualo Rai, Saipan, CNMI.

17. LFC employed and used Plaintiffs' services and labor in taking products from the shipping containers and putting goods and items taken from inside the containers, into the store for storage and display at New XO Market.

18. On information and belief, at all relevant times, LFC generated in excess of $500,000 in annual gross revenue income.

19. LFC employed Plaintiffs and/or suffered or permitted Plaintiffs to work at its business facility (New XO Market and Partypoker game room) in Gualo Rai, Saipan, CNMI.

20. On information and belief, LFC at all pertinent times, employed approximately 25 employees at its Gualo Rai business/facility.

21. On or about March 03, 2020, LFC applied for a Food Handler Certificate for Plaintiff Yousuf. *See* attached Food Handler Certificate Application as **Exhibit "1"** hereto.

22. The said application, which contains handwritten entries, indicates the "Name of Corporation" as "Long Feng Corporation dba New XO Market." *Id.*

23. On or about March 20, 2020 (Issue Date), the said application was approved enabling Yousuf to work as a food handler (bagger) in New XO Market. *See* attached Food Handler Certificate as **Exhibit "2"** hereto.

24. The said Food Handler Certificate shows or indicates a check mark in the box for "Renewal" and list the "Name of Business/Corp." as "NEW XO MARKET." *Id.*

### C. Defendant GuoWu Li

25. On information and belief, Defendant GuoWu Li ("Mr. Li"), is a citizen of China, and resided at all relevant times, in the CNMI, and as the President/Secretary of LFC, was the highest ranking corporate staff, and also doing business as New XO Market and Partypoker.

26. On information and belief, Mr. Li at all pertinent times was the President/Secretary of LFC with significant controlling ownership interest[1] and operational control of LFC. *See* attached Annual Corporation Report as **Exhibit "3"** hereto.

27. Mr. Li personally had the keys to the doors and Mr. Li personally unlocked the doors at approximately 6:30 every morning to let the workers in to work at LFC's Gualo Rai building/business center.

28. After opening the New XO Market for business each morning, Mr. Li ordered and each Plaintiff took orders and directions from him during each Plaintiff's work shift.

29. On information and belief, Mr. Li in addition to having and using as his office and living quarters on the 2nd floor of the New XO Market, both Mr. Li and Ms. Xu could be seen moving about the Gualo Rai's business premises daily.

30. On information and belief, Mr. Li negotiated checks in LFC's name and issued them to Ranada and/or NVM Enterprises ostensibly as partial payment of Plaintiffs' wages.

### D. Defendant Xu Gui Qing

31. On information and belief, Defendant Ms. Xu Gui Qing ("Ms. Xu"), is a citizen of China, and resided at all relevant times, in the CNMI, and was the daily supervisor of Plaintiffs, who

---

[1] On information and belief, Mr. Li owns 100% of LFC's commons stocks, as shown in the Annual Corporation Report attached as Exhibit "3" hereto.

had authority to hire and fire Plaintiffs and who controlled, made, and determined the daily work schedule and work assignments of Plaintiffs and other employees on a daily basis.

32. On information and belief, Mr. Li and Ms. Xu are husband and wife and/or living together as husband and wife in Saipan, CNMI.

33. On information and belief, Ms. Xu hired each Plaintiff on different dates to work for LFC at its New XO Market and Partypoker game room facilities.

34. On information and belief, Ms. Xu determined the rate of pay and compensation amount for the Plaintiffs' hours worked.

35. On information and belief, Ms. Xu's practice was to tell and give each Plaintiff verbally a statement of their daily work schedule.

36. Ms. Xu gave orders and instructions daily to each Plaintiff and other workers while working inside New XO Market and Partypoker game room.

37. Ms. Xu instructed Plaintiffs to manually keep (write) their respective time records.

38. Ms. Xu prohibited the Plaintiffs from recording the actual time they arrived to work and/or the actual time each Plaintiff would leave work.

39. Ms. Xu gave the Plaintiffs instructions only to write down on their time cards the verbal time schedule given, as hours worked.

40. Ms. Xu prohibited the Plaintiffs from eating their lunch/meals during their work shift warning them that any time spent for such breaks would be deducted from their wages.

41. Ms. Xu admonished the Plaintiffs for using the restroom during working hours, as being a waste of time, telling them to use the restroom at their house instead, as the store's restroom was for customers.

42. Ms. Xu informed each Plaintiff on different dates of each Plaintiff's termination from employment.

43. Ms. Xu had the keys to the doors of the New XO Market which Ms. Xu personally locked at approximately 12:00 p.m. (midnight) every night after sending the workers home.

### E. Defendant Feloteo V. Ranada

44. On information and belief, Defendant Feloteo V. Ranada ("Mr. Ranada"), is a citizen of the Philippines, and resided at all relevant times, in the CNMI and was doing business as and/or operated and controlled NVM Enterprises as his sole business operation and enterprise.

45. Mr. Ranada assigned and/or posted the Plaintiffs either as security guards and/or bagger at New XO Market and Partypoker game room facilities.

46. Mr. Ranada charged and LFC initially paid a minimum wage of $5.05 per hour for each Plaintiff's hours worked to Mr. Ranada and/or NVM Enterprises. *See* copy of NVM's Billing Statement dated November 30, 2018, attached as **Exhibit "4"** hereto.[2]

47. The said minimum wage rate of $5.05 per hour was increased to $5.55 per hour, then further increased to $6.05 per hour for each Plaintiff on different times. *See* copies of NVM's Billing Statement(s) dated September 30, 2019 and September 15, 2020, respectively attached as **Exhibits "5"** and **"6"** hereto.

48. Mr. Ranada deducted certain amount from each Plaintiff's wages by paying each Plaintiff at the flat rate of $4.25 per hour. To illustrate: the Billing Statement dated September 15, 2020 (Exhibit "6" hereto) indicates the "Rate an hour" as "$6.05c" while each Plaintiff alleges herein that he is only paid a flat rate of $4.25 per hour ($6.05 - $4.25 = **$1.80**).

49. Plaintiffs' weekly wages[3] fell further below the statutory minimum wage (not less than

---

[2] Exhibits "4," "5," and "6" were provided by Defendants LFC, Mr. Li and Ms. Xu in their initial disclosures to Plaintiffs.

[3] Taking the September 15, 2020 Billing Statement (Exhibit "6" hereto) as an example, Yousuf worked 60 hours for one week [September 1 to 15, 2020: 120 hrs. ÷ 2 weeks = 60 hrs. per week] multiplied by $4.25 hourly flat rate set by

1   $7.25 an hour) and/or overtime rate under the FLSA.

2   50. Defendants failed to keep or maintain full and accurate records of hours actually worked by the Plaintiff, and/or amounts actually paid each work week, as required by § 215(a)(5) of the FLSA.

## FACTUAL BACKGROUND

### A. Plaintiff Abu Yousuf

51. From on or about April 07, 2018, Yousuf at all relevant times, worked for and was employed by or suffered to work by LFC at its New XO Market and Partypoker game room in Gualo Rai, Saipan, CNMI.

52. The employment and/or agreements were renewed, variously, by the oral or written consent of the parties and/or by their conduct, annually from April 07, 2018 during Yousuf's approximately three (3) years of employment with LFC, which ended on February 19, 2021.

53. Yousuf was initially hired to work as a security guard, but also worked as a jack-of-all-trades, as a bagger, with Defendants' knowledge, approval, and direction, Yousuf worked from Monday through Sunday, performed work in excess of forty (40) hours per work week on a regular and repeated basis, doing various assigned tasks in addition to security work, including but not limited to: mopping and cleaning the store floor, including cleaning up dog feces and liter; carrying and lifting heavy boxes and crates of vegetables and/or fruits, sacks of rice, frozen meat and fish, dog and cat foods, mineral water and other items from the store warehouse to the display racks; putting in the purchased items into designated plastic bags or containers and carrying said items from the

---

Defendants = **$255.00 per workweek**. Under FLSA, Yousuf should be getting paid at least **$290.00 per workweek** [$7.25 statutory rate x 40 hours]. On the other hand, Rokonnurzzaman worked 62.5 hours for one week (*see* Exhibit "4" hereto [November 16 to 30, 2018]: 125 hrs ÷ 2 weeks = 62.5 hrs. per week]) multiplied by $4.25 hourly flat rate set by Defendants = **$265.62 per workweek**. Under FLSA, Rokonnurzzaman should be getting paid at least **$290.00 per workweek** [$7.25 statutory rate x 40 hours].

store counter to the customer's parked vehicle outside the store.

54. During the first work weeks, from April 07, 2018 through January 22, 2019, Yousuf worked under and was given a verbal work schedule at the store and/or at the poker arcade from Monday through Sunday, beginning at 4:00 p.m. until 11:30 p.m., as determined and instructed by Ms. Xu.

55. Thereafter, Ms. Xu verbally set Yousuf's work schedule, as follows:

(a). From January 23, 2019 through May 31, 2019 - beginning 9:00 a.m. until 11:30 p.m.;

(b). From June 1, 2019 through September 1, 2019 - beginning 11:00 a.m. until 11:30 p.m.;

(c). From September 2, 2019 through October 5, 2019 - beginning 4:30 p.m. until 11:30 p.m.;

(d). From October 6, 2019 through March 6, 2020 - beginning 4:30 p.m. until 7:00 a.m. the following day;

(e). From March 7, 2020 through March 24, 2020 - beginning 10:00 a.m. until 11:30 p.m.;

(f). From March 25, 2020 through March 28, 2020 - beginning 7:00 a.m. until 1:00 p.m. (shortened hours due to Covid-19 protocols);

(g). From March 29, 2020 through April 20, 2020 - beginning 7:00 a.m. until 6:00 p.m.;

(h). From April 21, 2020 through May 24, 2020 - beginning 10:00 a.m. until 6:00 p.m.;

(i). From May 25, 2020 through June 24, 2020 - beginning 10:00 a.m. until 8:30 p.m.; and

(j). From June 25, 2020 through February 19, 2021 - beginning 12:00 p.m. until 8:00 p.m.

56. On or about February 19, 2021, after Yousuf's work shift that day, Ms. Xu called Yousuf

by phone and told him that she, Ms. Xu had found someone willing to replace him and work for the $4.25 hourly rate. Ms. Xu then informed Yousuf that there was no need for him to report for work anymore.

### B. Plaintiff Md. Rokonnurzzaman

57. From on or about May 26, 2018 through January 20, 2019, Rokonnurzzaman worked for LFC as a security guard.

58. As a security guard, Rokonnurzzaman, with Defendants' knowledge, approval, and direction, worked from Monday through Sunday each week and work week, and performed work in excess of forty (40) hours per each of such work weeks, doing various assigned tasks in addition to security work, including but not limited to: unloading and carrying various imported goods and merchandise from the shipping containers to the store warehouse for initial storage safekeeping; mopping and cleaning the store floor, including dog feces and liter; carrying and lifting heavy boxes and crates of vegetables and/or fruits, sacks of rice, frozen meat and fish, dog and cat foods, mineral water and other items from the store warehouse to the display racks; putting in the purchased items into designated plastic bags or containers and carrying said items from the store counter to the customer's parked vehicle outside the store.

59. On or before May 26, 2018 - Rokonnurzzaman's first day of work, he was directed verbally by Ms. Xu to start working that day from 10:00 a.m. until 4:00 p.m.

60. During the succeeding workweeks and each day of his employment, from May 27, 2018 through January 20, 2019, as ordered and verbally directed by Ms. Xu, Rokonnurzzaman worked at the store and/or at the poker arcade (game room) from Monday through Sunday, each and every week, beginning 8:00 a.m. until 2:00 p.m., and oftentimes would continue working until 4:00 p.m., and thus perform work in excess of forty (40) hours per each such work week performing work during those extra work hours.

61. Rokonnurzzaman missed work only on two occasions, because of sickness, each time he notified Ms. Xu in advance of why he needed to be absent.

62. On or about January 20, 2019, without reasonable explanation, Ms. Xu terminated Rokonnurzzaman's employment after the latter complained earlier about his below-minimum wage rate and/or unpaid overtime and followed up and inquired about the status of his CW-1 application, as earlier promised to him.

### FIRST CAUSE OF ACTION
### (As to all Defendants)
### Failure to Pay Minimum/Applicable Wages in Violation of FLSA

63. The allegations in paragraphs 1 through 62 are re-alleged and incorporated by this reference in this First Cause of Action.

64. Defendants have willfully violated the provisions of Sections 206 and 207 of the FLSA by knowingly and intentionally failing to pay Plaintiffs their full and applicable minimum wages in each 7-day work week period for which they performed compensable work or services for the Defendants.

65. Per initial computation without the assistance of an accountant, Yousuf determined and believed in good faith that he is owed not less than $17,997.00 unpaid wages by the Defendants; while Plaintiff Rokonnurzzaman determined and believes in good faith that he is owed not less than $7,103.45 unpaid wages by the Defendants.

66. Defendants are thus liable and obligated to pay Plaintiffs their full and applicable regular wages pursuant to the FLSA, plus an additional equal amount as liquidated damages.

67. Plaintiffs likewise move and request an award of costs of this action, reasonable attorney's fees pursuant to §216(b) of the FLSA, prejudgment and post-judgment interest on all unpaid minimum wage amounts.

## SECOND CAUSE OF ACTION
### (As to all Defendants)
### Failure to Pay Overtime Wages in Violation of FLSA

68. The allegations in paragraphs 1 through 67 are re-alleged and incorporated by reference in this Second Cause of Action.

69. Defendants have willfully violated the provisions of § 207 of the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages in the amount of one and one-half times their applicable regular pay rate for each and all of the hours worked by Plaintiffs in excess of forty (40) hours in each work week.

70. In addition, the nature of Plaintiffs' job at LFC would regularly require each of them to stay at work and keep working past each work schedule, time. However, Ms. Xu, acting in the interest of LFC, refused to allow either Plaintiff to record any time for compensation purposes that was different from the given verbal work schedule to each Plaintiff.

71. As a result, Plaintiffs were regularly and repeatedly worked off the clock without proper straight time and/or overtime compensation.

72. Taken together, their off the clock work caused the Plaintiffs to perform work in excess of forty (40) hours per each work week on a regular and continuous basis without overtime compensation.

73. Per initial computation without the assistance of an accountant, Yousuf determined and believed in good faith that he is owed not less than $32,365.88 unpaid overtime by the Defendants; while Plaintiff Rokonnurzzaman determined and believes in good faith that he is owed not less than $2,500.00 unpaid overtime by the Defendants.

74. The Plaintiffs performed job duties that do not fall within any exemptions from overtime under the FLSA.

75. Defendants are thus liable and obligated to pay Plaintiffs their full and applicable

overtime wages pursuant to the FLSA, plus an additional equal amount as liquidated damages.

76. Plaintiffs are likewise entitled to an award of costs of this action and reasonable attorney's fees pursuant to §216(b) of the FLSA and prejudgment and post-judgment interest on unpaid overtime.

**THIRD CAUSE OF ACTION**
**(As to Defendants LFC, Li and Xu)**
**Unlawful Retaliation in Violation of FLSA**

77. The allegations in paragraphs 1 through 76 are re-alleged and incorporated by reference in this Third Cause of Action.

78. On various occasions and times, Plaintiffs made clear and focused claims and complaints for payment of full and proper wages to Ms. Xu, and also inquired about payment of their back wages.

79. On or about February 18, 2021, Yousuf again made similar complaint to Ms. Xu about his unpaid wages; while on or about January 20, 2019, Rokonnurzzaman also made similar complaint to Ms. Xu.

80. Plaintiffs also on several occasions and times followed up, inquired and asked from Ms. Xu about the status of their I-129CW applications, as earlier promised to them by the Defendants.

81. After hearing Plaintiffs' repeated complaints regarding unpaid wages and unfulfilled promise to file I-129CW petitions for Plaintiffs, Ms. Xu abruptly terminated their employment without advance notice.

82. On information and belief, Ms. Xu's act of terminating Plaintiffs' employment with LFC was with prior knowledge of, and/or in consultation with, and was not objected to by Mr. Li.

83. In so doing, Defendants have acted callously and have willfully violated section 215(a)(3) of the FLSA, which prohibits retaliation against an employee because he "has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the rights

contained in the FLSA.

84. Defendants' said adverse employment action constituted retaliatory discharge/action, undertaken in direct and consequential response to Plaintiffs' demand and assertion of workplace rights protected by the FLSA.

85. As a direct, foreseeable, and proximate result of Defendants' retaliatory action, Plaintiffs have suffered loss of earnings and job benefits; they have suffered and continue to suffer emotional distress; and they have incurred and continue to incur damages and expenses.

86. Plaintiffs are therefore entitled to legal and equitable relief including compensatory and punitive damages, as well as reasonable attorney's fees and costs pursuant to § 216(b) of the FLSA, 29 U.S.C. § 216(b).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for an award, order and relief as follows:

1. That Defendants be found jointly and severally liable and ordered to pay Plaintiffs the applicable minimum and overtime wages for all hours worked or suffered to work by Plaintiffs, in an amount to be determined at trial;

2. That Defendants be found liable for and ordered to jointly and severally pay Plaintiffs their regular and overtime wages for all hours worked or suffered to work by Plaintiffs in excess of forty (40) hours in each work week, in an amount to be determined at trial;

3. That Defendants be found liable for and ordered, jointly and severally, to pay Plaintiffs an equal amount as liquidated damages, compensatory and punitive damages, prejudgment and post-judgment interest, and reasonable attorney's fees and costs; and

4. For the imposition of appropriate sanctions and penalties against each and all the Defendants to deter future violations regarding willful failure to pay wages pursuant to FLSA.

5. For such other and further relief as may be deemed proper at law or in equity.

Dated this 24^(th th) day of February, 2022.

/s/
JOE HILL
Attorney for Plaintiffs

## VERIFICATION

I declare under penalty of perjury that the above Second Amended Complaint for Violation of the Fair Labor Standards Act was translated to me from English into my native language of Bengali by a translator chosen by me and that the factual allegations in the said Second Amended Complaint are true and correct to the best of my knowledge and belief and that this declaration was executed this 24^(th) day of February, 2022 at Saipan, Commonwealth of the Northern Mariana Islands.

ABU YOUSUF
Plaintiff/Declarant

MD. ROKONNURZZAMAN
Plaintiff/Declarant