JOE HILL
HILL LAW OFFICES
P.O. Box 500917
Saipan, MP 96950
Tel.: (670) 234-7743/6806
Fax: (670) 234-7753
E-mail: vesta@pticom.com

*Attorney for Plaintiff Abu Yousuf*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ABU YOUSUF,<br><br>**Plaintiff,**<br><br>vs.<br><br>**LONG FENG CORPORATION** *dba* **NEW XO MARKET and PARTYPOKER, GUOWU LI, XU GUI QING, and FELOTEO V. RANADA** *dba* **NVM ENTERPRISES, jointly and severally,**<br><br>**Defendants.** | Civil Case No. 1:21-cv-00015<br><br>THIRD AMENDED COMPLAINT FOR VIOLATION OF THE FAIR LABOR STANDARDS ACT |

**COMES NOW** Plaintiff Abu Yousuf, through counsel, pursuant to the Court's Order Approving Stipulation to File Third Amended Complaint, Answer to Third Amended Complaint, . . . (ECF No. 80) dated May 08, 2023, and as his Third Amended Complaint ("TAC") and causes of action and claims, alleges and avers against Defendants, jointly and severally, as follows:

### INTRODUCTION

1. This is a complaint, *inter alia*, for unpaid regular and overtime wages, in violation of the Fair Labor Standards Act (FLSA), as amended, and made applicable to this action by the Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, Article V, §502(a)(2), and under the general laws of the Commonwealth of the Northern Mariana Islands (CNMI).

2. Plaintiff Abu Yousuf hereby brings his claims for labor, work and services, duly

performed, rendered and done in a workman-like manner for Defendants-employers who knowingly, wilfully, intentionally and deliberately refused and failed to pay Plaintiff at the rate or amount provided for or required under the FLSA, against Defendants Long Feng Corporation *dba* New XO Market and Partypoker, Guo Wu Li, Xu Gui Qing, and Feloteo V. Ranada *dba* NVM Enterprises.

3. Defendants Long Feng Corporation, Guo Wu Li and Xu Gui Qing own and operate a grocery store known as New XO Market and an adult game room business known as Partypoker in Gualo Rai, Saipan, CNMI.

4. Defendant Feloteo V. Ranada *dba* NVM Enterprises, a sole proprietorship, is and was at all relevant times engaged in the business of providing manpower services and workers/laborers to other businesses and employers, including Long Feng Corporation and other Defendants.

5. Plaintiff further alleges and avers that Defendants knowingly and willfully paid him a flat rate of $4.25 per hour for regular hours worked and for overtime hours worked.

6. Plaintiff therefore seeks and prays for an order and award of compensatory damages for unpaid minimum wages and unpaid overtime, plus liquidated damages under FLSA, 29 U.S.C. § 216(b), pre-judgment and post-judgment interest, attorney's fees and costs.

## JURISDICTION AND VENUE

7. The Court is granted jurisdiction over Plaintiff's FLSA claims under 28 U.S.C. §1331 (federal question jurisdiction), and as proceedings arising under an Act of Congress regulating commerce pursuant to 28 U.S.C. §1337(a).

8. The Court also has jurisdiction over Plaintiff's regular and overtime wage claims pursuant to 29 U.S.C. §§ 206 and 207.

9. Venue is properly placed in the United States District Court for the Northern Mariana Islands in that all parties were present in, and all acts alleged and complained of occurred in the CNMI.

## PARTIES AND CAPACITY

### A. Plaintiff

10. Plaintiff Abu Yousuf ("Plaintiff") is a citizen of Bangladesh and resided at all relevant times, in the CNMI and worked for and/or was suffered to work variously by Defendant Long Feng Corporation, through its supervisory and management staff, as a security guard and/or bagger, and as a general laborer, from approximately April 27, 2018 until February 19, 2021.

11. Plaintiff worked and performed compensable services in and as a non-exempt employee earning and/or being paid a flat rate of $4.25 per hour.

12. At all relevant times herein, Plaintiff was given and/or took orders and directions from either Defendant GuoWu Li or Defendant Xu Gui Qing, or both, while working at New XO Market and/or Partypoker game room.

13. At all relevant times, Plaintiff relied and depended upon his income from his work at New XO Market and Partypoker for his livelihood and support.

14. At all relevant times, Plaintiff performed and provided security and bagging services which are indispensable to Long Feng Corporation's store/grocery and poker gameroom business operation.

15. At all relevant times, Plaintiff performed his work diligently and in a workmanlike manner for the subject Defendants.

### B. Defendant Long Feng Corporation

16. Defendant Long Feng Corporation ("LFC"), is a domestic corporation organized under Commonwealth law and also doing business as and under the names of New XO Market and Partypoker, with its principal place of business believed to be in Gualo Rai, Saipan, CNMI.

17. At all relevant times, LFC was an enterprise engaged in commerce within the meaning of the FLSA, in that, *inter alia,* it had employees handling, selling, and working on goods, materials and commodities including, but not limited to, vegetables, fruits, meats, and other cooking

ingredients; canned goods, soft drinks and beverages; dog food and other animal feeds; spoon, fork, frying pan, and other kitchen utensils and equipment; poker machines and other gaming paraphernalia that had been made, shipped, produced and transported in interstate and foreign commerce, and designed for sale, at bulk or in retail, to consumers and customers, in 20 or 40 foot shipping containers that had been shipped in interstate and foreign commerce, that LFC had transported to its business lot and storage facilities in Gualo Rai, Saipan, CNMI from the port.

18. As stipulated and agreed upon by all parties, LFC, at all relevant times herein, generated in excess of $500,000 in annual gross revenue/income. *See* attached Stipulated and Uncontroverted Fact as **Exhibit "1"** hereto.

19. LFC, through Xu Gui Qing, initially hired and/or permitted or suffered Plaintiff to work as a security guard at its business facility (New XO Market and Partypoker game room) in Gualo Rai, Saipan, CNMI.

20. In addition to security services, LFC also engaged and/or permitted or suffered Plaintiff to work variously as a jack-of-all-trades, as a bagger, with Defendants' knowledge, approval, and direction.

21. On information and belief, LFC at all pertinent times, employed approximately 25 employees at its Gualo Rai business/facility.

22. On or about March 03, 2020, LFC applied for the renewal Food Handler Certificate for Plaintiff. *See* attached Food Handler Certificate Application as **Exhibit "2"** hereto.

23. The said application, which contains handwritten entries, indicates the "Name of Corporation" as "Long Feng Corporation dba New XO Market." *Id.*

24. On or about March 20, 2020 (the stated Issue Date), the said application was approved enabling Plaintiff to work as a food handler (bagger) in New XO Market. *See* attached Food Handler Certificate as **Exhibit "3"** hereto.

25. The said Food Handler Certificate shows or indicates a check mark in the box for

"Renewal" and list the "Name of Business/Corp." as "NEW XO MARKET." *Id.*

26. On information and belief, LFC provided the application fees and other government agency fees associated with the procurement of said Food Handler Certificate.

### C. Defendant Guo Wu Li

27. Defendant GuoWu Li ("Mr. Li"), is a citizen of China, and resided at all relevant times, in the CNMI, and as the President/Secretary of LFC, was the highest ranking corporate staff, and also doing business as New XO Market and Partypoker.

28. Mr. Li at all pertinent times was the President/Secretary of LFC with significant controlling ownership interest[1] and operational control of LFC. *See* attached Annual Corporation Report as **Exhibit "4"** hereto.

29. Mr. Li personally had the keys to the doors and Mr. Li personally unlocked the doors at approximately 6:30 a.m., every morning to let the workers in to work at LFC's Gualo Rai building/business center.

30. After opening the New XO Market for business each morning, Mr. Li ordered and Plaintiff took orders and directions from him during Plaintiff's work shift.

31. Mr. Li taught and tasked Plaintiff to periodically check and monitor the store's air-conditioning temperature.

32. Mr. Li taught and tasked Plaintiff to turn off the store's electric lightings during closing time.

33. Mr. Li taught and tasked Plaintiff to periodically monitor the temperature of the store's chillers and freezers.

34. Mr. Li showed Plaintiff where to get the frozen foods and other store merchandise.

35. Mr. Li required/ordered Plaintiff to wear security guard uniform while at work.

---

[1] On information and belief, Mr. Li owns 100% of LFC's commons stocks, as shown in the attached Annual Corporation Report.

- 5 -

36. On information and belief, Mr. Li in addition to having and using as his office and living quarters on the 2nd floor of the New XO Market, both Mr. Li and Xu Gui Qing, who are husband and wife, could be seen moving about the Gualo Rai's business premises daily.

37. On information and belief, Mr. Li negotiated checks in LFC's name and issued them to Ranada and/or NVM Enterprises ostensibly as partial payment of Plaintiff's wages.

### D. Defendant Xu Gui Qing

38. Defendant Xu Gui Qing ("Ms. Xu"), is a citizen of China, and resided at all relevant times, in the CNMI, and was the daily supervisor of Plaintiff, who had authority to hire and fire and who controlled, made, and determined the daily work schedule and work assignments of Plaintiff and other employees on a daily basis.

39. Ms. Xu interviewed and hired Plaintiff to work for LFC at its New XO Market and Partypoker game room facilities.

40. Ms. Xu, on behalf of LFC, contracted verbally with Plaintiff regarding security service.

41. Ms. Xu showed Plaintiff the different sections inside the store and taught him how to do and perform security duties at New XO Market and Partypoker gameroom.

42. Ms. Xu taught Plaintiff how to do bagging of store merchandise, i.e., sturdy items first and fragile ones later.

43. Ms. Xu taught Plaintiff how to clean her pet dog poop inside the store and tasked Plaintiff to do so as part of his job/duty.

44. Ms. Xu required/ordered Plaintiff to wear security guard uniform while at work.

45. Ms. Xu determined and set the rate of pay and compensation amount to be paid to Plaintiff.

46. Ms. Xu's practice was to tell and give Plaintiff a verbal statement of his daily work schedule.

47. Ms. Xu gave verbal orders and instructions daily to Plaintiff and other workers while

- 6 -

working inside New XO Market and Partypoker gameroom.

48. Ms. Xu instructed Plaintiff to manually keep and write his own time records.

49. Ms. Xu prohibited the Plaintiff from recording the actual time he arrived to work and/or the actual time that Plaintiff would leave work.

50. Ms. Xu gave the Plaintiff instructions to write down on his time cards only the verbal time schedule given, as hours worked.

51. Ms. Xu prohibited the Plaintiff from eating his lunch/meals during his work shift warning him that any time spent for such breaks would be deducted from his wages.

52. Ms. Xu admonished the Plaintiff for using the store restroom during working hours, as being a waste of time, telling him to use the restroom at his house instead, as the store's restroom was reserved for store customers.

53. Ms. Xu ordered Plaintiff to do laundry of her (Ms. Xu's) personal clothing, pick up her kids from relatives' or friends' house, and pick up pre-ordered foods from on-island restaurants.

54. Ms. Xu is so informed in advance by Plaintiff whenever he (Plaintiff) is coming late for work or would be absent from work for whatever reason.

55. Ms. Xu told and required Plaintiff to secure a Food Handler's Certificate.

56. Ms. Xu required Plaintiff to attend a workshop as a requirement for Plaintiff to have a Food Handler Certificate.

57. On information and belief, Ms. Xu negotiated checks in LFC's name and issued them to Ranada and/or NVM Enterprises ostensibly as partial payment of Plaintiff's wages.

58. Ms. Xu had and kept a set of keys to the doors of the New XO Market which Ms. Xu personally locked at approximately 12:00 p.m. (midnight) every night after sending the workers home and all customers had gone.

59. Ms. Xu terminated Plaintiff's employment by phone and told him that she, Ms. Xu, had

1 | found someone willing to replace him and work for the $4.25 hourly rate.

2 | 60. Ms. Xu then informed Plaintiff by phone that there was no need for him to report for work anymore at New XO Market.

### E. Defendant Feloteo V. Ranada

61. Defendant Feloteo V. Ranada ("Mr. Ranada"), is a citizen of the Philippines, and resided at all relevant times, in the CNMI and was doing business as and/or operated and controlled NVM Enterprises as his sole business operation and enterprise.

62. Mr. Ranada introduced Plaintiff to Ms. Xu for the purpose of employment at LFC.

63. Mr. Ranada assigned and/or posted the Plaintiff variously either as security guard and/or bagger at New XO Market and Partypoker game room facilities.

64. Mr. Ranada charged and LFC initially paid a minimum hourly rate of $5.05 per hour for Plaintiff's hourly work to Mr. Ranada and/or NVM Enterprises. *See* copy of NVM's Billing Statement dated November 30, 2018, attached as **Exhibit "5"** hereto.[2]

65. The said minimum wage rate of $5.05 per hour was increased to $5.55 per hour, then further increased to $6.05 per hour for Plaintiff, at different times. *See* copies of NVM's Billing Statement(s) dated September 30, 2019 and September 15, 2020, respectively attached as **Exhibits "6"** and **"7"** hereto.

66. Mr. Ranada deducted certain amounts from Plaintiff's wages by paying Plaintiff at the flat rate of $4.25 per hour. To illustrate: the Billing Statement dated September 15, 2020 (Exhibit "7" hereto) indicates the "Rate an hour" as "$6.05c" while Plaintiff alleges herein that he is only paid a flat rate of $4.25 per hour ($6.05 - $4.25 = $1.80).

67. Plaintiff's weekly wages fell further below the statutory minimum wage (not less than

---

[2]Defendants LFC, Mr. Li and Ms. Xu provided the attached Exhibits "5" through "7" in their Initial Disclosures.

$7.25 an hour) and/or overtime rate under the FLSA. Taking the September 15, 2020 Billing Statement (Exhibit "7" hereto) as an example, Plaintiff worked 60 hours for one week [September 1 to 15, 2020: 120 hrs. ÷ 2 weeks = 60 hrs. per week] multiplied by $4.25 hourly flat rate set/paid by the Defendants = $255.00 per workweek. Under FLSA, Plaintiff should be getting paid at least $290.00 per workweek [$7.25 statutory rate x 40 hours].

68. Defendants knowingly and willfully failed to keep or maintain full and accurate records of hours actually worked by the Plaintiff, and/or amounts actually paid each workweek, as required and provided by 29 U.S.C §§ 211(c) & 215(a)(5) of the FLSA. *See* Declaration of Ms. Xu Gui Qing. . . (ECF No. 64-2 at 5 ¶¶ 52 & 53).

## FACTUAL BACKGROUND

### A. Plaintiff Abu Yousuf

69. From on or about April 27, 2018, Plaintiff at all relevant times, worked for and was employed by or suffered to work by the Defendants at the New XO Market and Partypoker game room in Gualo Rai, Saipan, CNMI.

70. Plaintiff was initially hired to work as a security guard, but also worked as a jack-of-all-trades, as a bagger and a laborer, with Defendants' knowledge, approval, and direction.

71. During his employment with the subject Defendants, Plaintiff worked each day and each workweek, except for 5 days' leave.

72. Plaintiff worked from Monday through Sunday, performed work in excess of forty (40) hours per workweek on a regular and repeated basis, doing various assigned tasks in addition to security work, including but not limited to: mopping and cleaning the store floor, including cleaning up dog feces and liter; carrying and lifting heavy boxes and crates of vegetables and/or fruits, sacks of rice, frozen meat and fish, dog and cat foods, mineral water and other items from the store warehouse to the display racks; putting in the purchased items into designated plastic bags or

containers and carrying said items from the store counter to the customer's parked vehicle outside the store.

73. During the first workweeks, from April 27, 2018 through January 22, 2019, Plaintiff worked under and was given a verbal/oral work schedule at the store and/or at the Partypoker arcade from Monday through Sunday, beginning at 4:00 p.m. until 11:30 p.m., each day as determined and instructed by Ms. Xu.

74. Thereafter, Ms. Xu verbally set Yousuf's work schedule, as follows:

(a). From January 23, 2019 through May 31, 2019 - beginning 9:00 a.m. until 11:30 p.m.;

(b). From June 1, 2019 through September 1, 2019 - beginning 11:00 a.m. until 11:30 p.m.;

(c). From September 2, 2019 through October 5, 2019 - beginning 4:30 p.m. until 11:30 p.m.;

(d). From October 6, 2019 through March 6, 2020 - beginning 4:30 p.m. until 7:00 a.m. the following day;

(e). From March 7, 2020 through March 24, 2020 - beginning 10:00 a.m. until 11:30 p.m.;

(f). From March 25, 2020 through March 28, 2020 - beginning 7:00 a.m. until 1:00 p.m. (shortened hours due to Covid-19 protocols);

(g). From March 29, 2020 through April 20, 2020 - beginning 7:00 a.m. until 6:00 p.m.;

(h). From April 21, 2020 through May 24, 2020 - beginning 10:00 a.m. until 6:00 p.m.;

(i). From May 25, 2020 through June 24, 2020 - beginning 10:00 a.m. until 8:30 p.m.; and

(j). From June 25, 2020 through February 19, 2021 - beginning 12:00 p.m. until 8:00 p.m.

75. Plaintiff worked more than 40 hours in many or in almost all of the seven-day workweeks and Defendants paid him a flat rate of $4.25 per hour.

76. Defendants took no affirmative action to assure compliance with the FLSA requirements regarding full payment of regular wages and overtime wages. *See* attached Letter dated October 5, 2017 Re : Contract Security Rate Adjustment as **Exhibit "8"** hereto.

77. On or about February 19, 2021, without notice or reasonable explanation and after Plaintiff complained earlier that day about the below-minimum wages and unpaid overtime and followed up and inquired about the status of his CW-1 petition as promised, Ms. Xu called Plaintiff by phone and told him that she, Ms. Xu, had found someone willing to replace him and work for the $4.25 hourly rate. Ms. Xu then informed and told Plaintiff that there was no need for him to report for work anymore.

**FIRST CAUSE OF ACTION**
(As to all Defendants)
**Failure to Pay Minimum/Applicable Wages in Violation of FLSA**

78. The allegations in paragraphs 1 through 77 are re-alleged and incorporated by this reference in this First Cause of Action.

79. Defendants have willfully violated the provisions of Sections 206 and 207 of the FLSA by knowingly and intentionally failing to pay Plaintiff his full and applicable minimum wages in each seven-day workweek period for which he performed compensable work or services for the Defendants.

80. Per initial computation with the assistance of an accountant, Plaintiff determined and believed in good faith that he is owed not less than $18,612.46 unpaid regular wages by the Defendants and/or in the amount as may be proven during the trial of the case.

81. Defendants are thus liable and obligated to pay Plaintiff his full and applicable regular wages pursuant to the FLSA, plus an additional equal amount as liquidated damages.

82. Plaintiff likewise moves and requests for an award of costs of this action, reasonable attorney's fees pursuant to §216(b) of the FLSA, prejudgment and post-judgment interest on all amounts.

## SECOND CAUSE OF ACTION
### (As to all Defendants)
### Failure to Pay Overtime Wages in Violation of FLSA

83. The allegations in paragraphs 1 through 82 are re-alleged and incorporated by reference in this Second Cause of Action.

84. During the workweeks that the Plaintiff worked overtime (i.e., more than 40 hours) the Defendants failed and refused to pay him overtime as required by the FLSA.

85. Despite seeing and knowing that Plaintiff was performing work more than 40 hours in a workweek without compensation, Defendants intentionally failed to prevent Plaintiff from performing such work.

86. Defendants knew that an employee such as Plaintiff was working more than 40 hours in a workweek because Defendants themselves or their agents or other employees witnessed him doing so at Defendants' facility in Gualo Rai. In addition, Defendants' electronic monitor in place inside the store would show that Plaintiff was working in excess of 40 hours in a workweek.

87. Moreover, the nature of Plaintiff's job at LFC would regularly require of him to stay at work and keep working past each work schedule/time. Ms. Xu had previously instructed the security guard(s) on duty not to leave his (their) post until the last store customer is gone.

88. However, Ms. Xu, acting on behalf and in the interest of LFC, refused to allow Plaintiff to record any time for compensation purposes that was different from the given verbal work schedule to Plaintiff.

89. As a result, Plaintiff was regularly and repeatedly worked off the clock without proper overtime compensation as required by FLSA.

90. Defendants have willfully violated the provisions of § 207 of the FLSA by knowingly and intentionally failing to pay Plaintiff overtime wages in the amount of one and one-half times his applicable regular pay rate for each and all of the hours worked by Plaintiff in excess of forty (40) hours in each workweek.

91. Per initial computation with the assistance of an accountant, Plaintiff determined and believed in good faith that he is owed not less than $33,242.90 unpaid overtime by the Defendants and/or in the amount as may be proven during the trial of the case.

92. The Plaintiff performed job duties that do not fall within any exemptions from overtime compensation under the FLSA.

93. Defendants are thus liable and obligated to pay Plaintiff his full and applicable overtime wages pursuant to the FLSA, plus an additional equal amount as liquidated damages.

94. Plaintiff is likewise entitled to an award of costs of this action and reasonable attorney's fees pursuant to §216(b) of the FLSA and prejudgment and post-judgment interest on unpaid overtime.

**THIRD CAUSE OF ACTION**
**(As to Defendants LFC, Li and Xu)**
**Unlawful Retaliation in Violation of FLSA**

95. The allegations in paragraphs 1 through 94 are re-alleged and incorporated by reference in this Third Cause of Action.

96. On several times, Plaintiff orally had made clear and focused claims and complaints for payment of full and proper wages to Ms. Xu, and also inquired about payment of his back wages.

97. Plaintiff had also on several occasions asked Ms. Xu about the status of the promised CW application for work authorization.

98. On or about February 18, 2021, Plaintiff again made similar complaint to Ms. Xu about his unpaid wages and overtime.

99. Complaints related to the FLSA made to employers are protected activity under 29 U.S.C. § 215(3).

100. After hearing Plaintiff's complaints regarding unpaid wages and unfulfilled promise to file CW petition for Plaintiff and as a response thereto, Ms. Xu abruptly terminated by phone his employment without advance notice.

101. On information and belief, Ms. Xu's act of terminating Plaintiff' employment with LFC was with prior knowledge of, and/or in consultation with, and was not objected to by Mr. Li.

102. In so doing, Defendants LFC, Mr. Li and Ms. Xu have acted callously and have willfully violated section 215(a)(3) of the FLSA, which prohibits retaliation against an employee because he "has filed any complaint or instituted or caused to be instituted any proceeding under or related to" the rights contained in the FLSA. 29 U.S.C. § 215(a)(3); *Lambert v. Ackerly,* 180 F.3d 997, 1004-05 (9th Cir. 1998).

103. The said Defendants' said adverse employment action constituted retaliatory discharge/action, undertaken in direct and consequential response to Plaintiff' demand and assertion of workplace rights protected by the FLSA.

104. As a direct, foreseeable, and proximate result of said Defendants' retaliatory action, Plaintiff has suffered loss of earnings and job benefits; he has also suffered and continue to suffer emotional distress; and he has incurred and continue to incur damages and expenses.

105. Plaintiff is therefore entitled to legal and equitable relief including compensatory and punitive damages, as well as reasonable attorney's fees and costs pursuant to § 216(b) of the FLSA. 29 U.S.C. § 216(b).

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for an award, order and relief as follows:

1. That Defendants be found jointly and severally liable and ordered to pay Plaintiff the applicable unpaid minimum and overtime wages for all hours worked or suffered to work by Plaintiff, in excess of forty (40) hours in each workweek in an amount as stated and claimed herein and/or as may be determined at trial;

2. That Defendants be found liable for and ordered, jointly and severally, to pay Plaintiff an equal amount as liquidated damages, compensatory and punitive damages, prejudgment and post-judgment interest, and reasonable attorney's fees and costs;

3. For the imposition of appropriate sanctions and penalties against each and all the Defendants to deter future violations regarding willful failure to pay wages pursuant to FLSA; and

4. For such other and further relief as may be deemed proper at law or in equity.

Dated this 12th day of May, 2023.

/s/ Joe Hill
**HILL LAW OFFICE**
Attorney for Plaintiff

### DECLARATION

I declare under penalty of perjury that the factual allegations in the above Third Amended Complaint for Violation of the Fair Labor Standards Act are true and correct to the best of my knowledge and belief and that this declaration was executed this 12th day of May, 2023 in Saipan, Commonwealth of the Northern Mariana Islands.

_____
**ABU YOUSUF**
Plaintiff/Declarant